# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CARL T. HARRIS,

                        Plaintiff,

v.

SGT KYLE DEMERS, CO II NATHAN PACH, CPT ROBERT RYMARKIEWICZ, and CO RUSSELL,

                        Defendants.

Case No. 23-CV-1188-JPS

**ORDER**

        Plaintiff Carl T. Harris, an inmate confined at Waupun Correctional Institution ("WCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

**1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

        The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

        On September 28, 2023, the Court ordered Plaintiff to pay an initial partial filing fee of $4.05. ECF No. 7. Plaintiff paid that fee on October 19, 2023. The Court will grant Plaintiff's motion for leave to proceed without

prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799

F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff names Defendants Sgt. Kyle Demers ("Demers"), C.O. II Nathan Pach ("Pach"), Cpt. Robert Rymarkiewicz ("Rymarkiewicz"), and C.O. Russell ("Russell") as defendants who violated his Eighth Amendment rights by their deliberate indifference to his serious risk of self-harm. ECF No. 1. On April 27, 2023, at approximately 8:30 a.m., Plaintiff informed Russell that he was suicidal and showed him a razor blade. *Id.* at 3. Plaintiff told Russell that he was going to slit his wrists. *Id.* Russell acknowledged that Plaintiff had a razor blade by looking at it, shrugging his shoulders, and stating, "What do you want me to do?" *Id.* At this point, Plaintiff covered his cell door window with a hand towel. *Id.* at 4. Approximately five to ten minutes later, Rymarkiewicz came to Plaintiff's cell door and asked what was going on. *Id.* Plaintiff showed Rymarkiewicz the razor and said he already told them his plan of self-harm/suicide and that he did not want to talk. *Id.* Plaintiff covered his window and left the door. *Id.* After stating that he was going to "suit-up," Rymarkiewicz left Plaintiff alone and never came back. *Id.* After they left, Plaintiff sliced his arm open, twice, with the razor. *Id.*

Approximately ten to twenty minutes later, Pach came to Plaintiff's cell. *Id.* After a brief exchange where Plaintiff told Pach it was his birthday on Sunday, April 30, and Pach suggested that Plaintiff "do that shit on Sunday" because Pach would not be working and did not want to deal with

Plaintiff. *Id.* Pach asked if Plaintiff really had a razor and asked to see it. *Id.* at 5. Plaintiff showed Pach the razor. *Id.* Pach asked Plaintiff if he wanted to give Pach the razor; Plaintiff said, "No." Pach laughed and said, "It was worth a try." *Id.* Plaintiff then showed Pach the cuts on this left arm and proceeded to slice his arm two more times while Pach watched. *Id.* Plaintiff told Pach he would continue slicing himself until he hit a vein, that he did not want to talk to Pach anymore, and Plaintiff covered his window. *Id.* Pach left Plaintiff's door and never came back. *Id.*

Plaintiff was left in his cell for approximately an hour to an hour-and-a-half; staff continued showers despite knowing that Plaintiff had a razor and was actively involved in an attempt to kill himself. *Id.* During this time, Plaintiff cut himself three mor times. *Id.* Plaintiff was housed in Restrictive Housing Unit ("RHU") and he could clearly see the stairs and the front of the range by the security bubble. *Id.* at 6.

Plaintiff heard the familiar voice of Demers. *Id.* Plaintiff peeked from behind his window covering and saw Demers shake his head back and forth while walking past Plaintiff's cell and going to the top of the stairs. *Id.* Plaintiff asked Demers to come talk to him and asked if he could be pulled out to see the crisis worker. *Id.* Demers shook his head, "No," before continuing down the stairs. *Id.* Plaintiff shouted that he was suicidal, had a razor blade, and was actively cutting his wrist. *Id.* Demers yelled, "I don't care, Harris! I'm not pulling you out! If you want to cut yourself, go ahead! You're acting like a baby!" *Id.*

At this point, Plaintiff began to feel like no one cared and he began to dig deeper and deeper into his wrist with the razor. *Id.* at 7. Plaintiff was able to cut the big vein in his wrist and blood began to squirt everywhere. *Id.* At approximately 10:40 a.m., Plaintiff heard talking on the range and he

Page 4 of 10
Case 2:23-cv-01188-JPS   Filed 10/31/23   Page 4 of 10   Document 8

went to the door to show Russell his wrist; blood squirted all over the window from the wound on Plaintiff's wrist. *Id.* Only at this point did Russell radio Demers that there was a medical emergency. *Id.* Demers came sauntering up the stairs casually. *Id.* Plaintiff was taken to the RHU nurses' station where his eight wounds were cleaned and tended to. *Id.* Harris was evaluated and put on observation status for four days. *Id.* After being released, on May 1, 2023, Plaintiff received a document from the crisis clinician stating that she heard Plaintiff yell that he was suicidal but was told that Plaintiff had recanted to staff. *Id.* The alleged recant was why the clinician never made contact prior to Plaintiff's suicide attempt that day. *Id.* Plaintiff believes that he would have died by bleeding out but for the quick action and professionalism of the nurse who treated him. *Id.*

### 2.3 Analysis

The Court finds that Plaintiff may proceed on an Eighth Amendment deliberate-indifference claim against Defendants Demers, Pach, Rymarkiewicz, and Russell for their indifference to the risk of Plaintiff's self-harm. The Eighth Amendment prohibits "cruel and unusual punishments" and "imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care." *Phillips v. Diedrick*, No. 18-C-56, 2019 WL 318403, at *2 (E.D. Wis. Jan. 24, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). While a prison official's deliberate indifference to a prisoner's substantial risk of serious harm violates the Eighth Amendment, not every claim by a prisoner that he did not receive adequate care will succeed. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). To prevail on such a claim, a plaintiff will have to provide evidence showing that "(1) his medical need was objectively serious, and (2) the defendant[] consciously disregarded this

need." *Berry v. Lutsey*, 780 F. App'x 365, 368–69 (7th Cir. 2019) (citing *Farmer*, 511 U.S. at 834).

Prison staff have a duty to prevent inmates from causing serious harm to themselves. *Pittman ex rel. Hamilton v. County of Madison*, 746 F.3d 766, 775–76 (7th Cir. 2014). Before an official will be liable for ignoring a risk of self-harm, however, the "risk of future harm must be sure or very likely to give rise to sufficiently imminent dangers." *Davis-Clair v. Turck*, 714 F. App'x 605, 606 (7th Cir. 2018) (internal quotation marks omitted). The question of when that risk of future harm becomes "sure or very likely to give rise to sufficiently imminent dangers" depends on the circumstances of the case. *See, e.g., Freeman v. Berge*, 441 F.3d 543, 546–47 (7th Cir. 2006) (explaining that "at some point," to ensure a prisoner is not "seriously endangering his health," prison officials would have a duty and right to step in and force a prisoner on a hunger strike to take nourishment); *see also Davis v. Gee*, No. 14-cv-617, 2017 WL 2880869, at *3–4 (W.D. Wis. July 6, 2017) (holding that to show a constitutional injury, the harm must present an objectively, sufficiently serious risk of serious damage to future health; swallowing a handful of Tylenol fails to do that).

Here, Plaintiff alleges that these defendants was aware that he planned to hurt himself and failed to act. Plaintiff further alleges that after informing these defendants, Plaintiff engaged in self-harm and was seriously injured. At this early stage, without more detailed information, the Court will allow Plaintiff to proceed on a deliberate indifference claim against Defendants Demers, Pach, Rymarkiewicz, and Russell.

3.  **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment deliberate-indifference claim against Defendants Demers, Pach, Rymarkiewicz, and Russell for their indifference to the risk of Plaintiff's self-harm.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants **Demers, Pach, Rymarkiewicz, and Russell**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $345.95 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall

forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 31st day of October, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202
>
> **DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.
>
> Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.