UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CARL T. HARRIS,

        Plaintiff,

v.                                                    Case No. 23-CV-1188

SGT. KYLE DEMERS, *et al.*,

        Defendants.

## DECISION AND ORDER

Plaintiff Carl T. Harris, who is representing himself and currently confined at Waupun Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Harris was allowed to proceed on a claim against defendants Sgt. Kyle Demers, CO Nathan Pach, Cpt. Robert Rymarkiewicz, and Jamall Russell pursuant to the Eighth Amendment for allegedly failing to prevent Harris's suicide attempt. The defendants filed a motion for summary judgment, which is fully briefed and ready for a decision. (ECF No. 20.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 12.)

## FACTS

On April 27, 2023, Harris was housed in the Restricted Housing Unit (RHU) at Waupun, where all defendants were staffed. (ECF No. 22, ¶¶ 23-27.) While Harris and the other prisoners in RHU were in the showers, staff completed a unit-wide cell search. (*Id.*, ¶ 28.) At approximately 8:15 a.m., defendant Demers searched Harris's cell and

removed contraband food items. (*Id.*, ¶ 33.) According to video evidence, at 8:38 a.m. defendant Russell escorted Harris from the showers back to his cell. (*Id.*, ¶ 36.) About ten minutes later, at 8:49 a.m., Harris showed Russell a razor and told him he was suicidal. (*Id.*, ¶ 37.) A minute later, pursuant to policy, Russell informed defendant Rymarkiewicz, his supervisor, that Harris had a razor, had covered his window, and was refusing to come out of his cell. (*Id.*, ¶ 38.) Seconds later, Rymarkiewicz went to Harris's cell along with Russell and attempted to speak with Harris. (*Id.*, ¶ 39.)

Eventually, Harris told Rymarkiewicz that "they had nothing to talk about" and, when Rymarkiewicz asked Harris what was going on, Harris responded, "If you are going to fuck with me, I'm going to fuck with y'all." (ECF No. 22, ¶ 41.) It is undisputed that at some point during this conversation Harris became agitated and started explaining that his issue was that his food had been confiscated. (ECF No. 35, ¶ 42.) Because Harris was agitated, Rymarkiewicz decided to ask the Security Director (not a defendant and unidentified) for permission to put together an extraction team to remove Harris from his cell. (*Id.*, ¶ 44.) Rymarkiewicz states that Harris never told him personally that he was suicidal or showed him a razor. (*Id.*, ¶ 46.) Harris acknowledges this but points out that Russell informed Rymarkiewicz that Harris was suicidal and that he had a razor. (*Id.*) Rymarkiewicz ordered Russell to stay with Harris at his cell door. (*Id.*, ¶ 44.)

At 8:54 a.m., after defendant Pach relieved Russell at Harris's cell door, Harris told Pach that he was upset that his food had been confiscated. (ECF No. 35, ¶¶ 49-50.) Harris also told Pach, "I know if I go, it's going to be at least 10 more motherfuckers

2

gonna go, so if you wanna do work and be on bullshit, let's do work and be on bullshit." (*Id.*, ¶ 51.) Harris became agitated again and told Pach something along the lines of, "I'm through talking. I'm gonna do what I'm gonna do, and we finna get this shit cracking." (*Id.*, ¶ 52.)

When Pach asked Harris if he had a razor on him, Harris showed him a razor. (ECF No. 35, ¶ 53.) Pach asserts that Harris mentioned that his birthday was on Sunday, to which Pach responded that he should "wait until Sunday is over." (*Id.*, ¶ 54.) Harris states that Pach actually told him "wait until Sunday to solve it. I do paperwork all the time," which Harris contends was Pach telling him to harm himself. (*Id.*) The court reviewed footage from Pach's body camera, and it is clear Pach said, "I can pick up overtime," not "I do paperwork all the time" and Pach did not goad Harris into harming himself. (ECF No. 30, Exh. 1003 at 3:50-4:05.) The video also shows that Pach asked for the razor and Harris refused to give it to him. (*Id.*; ECF No. 35, ¶ 55.)

Harris asserts that he began cutting himself in front of Pach. (ECF No. 35, ¶ 56.) Pach states that Harris never cut himself in front of him nor did he show Pach any cuts on his arm. (*Id.*) The video does not show Harris cutting himself.

Meanwhile, as Rymarkiewicz was seeking to assemble an extraction team, someone on staff (it is unclear from the record who) informed him that Harris had "recanted that he was suicidal and handed out the razor." (ECF No. 35, ¶¶ 58-59.) As a result, Rymarkiewicz told the psychological services clinician, Lauren Blanchette (not a defendant), that Harris said he was no longer suicidal. (*Id.*, ¶ 60.) Harris denies that he recanted. (ECF No. 35, ¶¶ 58-59.)

While this was occurring, at least three other prisoners in the RHU unit near Harris's cell began stating that they were going to self-harm. (ECF No. 35, ¶¶ 61-67.) When the prisoner in the cell immediately next to Harris's cell began cutting himself, Rymarkiewicz decided to use the cell extraction team for that prisoner instead of Harris. (*Id.*, ¶¶ 61-62.) Shortly after extracting that prisoner, which took approximately five minutes, two other prisoners covered their cell windows and began refusing to respond to staff. (*Id.*, ¶¶ 63-67.)

Amid this chaos, although at no point did Harris tell any of the defendants that he was going to begin cutting himself or use his emergency call button, the defendants assert that Harris began cutting himself. (ECF No. 22, ¶¶ 72, 96-97.) Harris states that he yelled to Demers that he was going to use his razor to cut himself. (*Id.*, ¶ 68.) According to Harris, Demers responded, "I don't care, Harris! I'm not pulling you out! If you want to cut yourself, go ahead! You're acting like a baby!" (*Id.*) Harris also states this interaction did not show up on the video because Demers "was on the other side of the wall in front of plaintiff's cell." (*Id.*, ¶ 70.)

At 10:47 a.m. Russell told Demers that Harris had cut himself. (ECF No. 35, ¶ 74.) Demers immediately went to Harris's cell, and Harris cooperated in being removed from the cell. (*Id.*, ¶ 75.) Demers also requested that a nurse remain to treat Harris. (*Id.*) Demers tied a towel around the wrist where Harris cut himself to deal with the bleeding while awaiting the nurse. (*Id.*, ¶ 78.) Demers saw only one actively bleeding wound. (*Id.*) Russell and non-defendant Officer McGuinness then arrived to escort Harris to the medical exam room in the RHU. (*Id.*, ¶ 80.)

4

Non-defendant Nurse Andrea Bleecker examined Harris and noted that "Harris had a laceration to his left anterior wrist that was approximately 2.5 cm in length." (ECF No. 35, ¶ 82.) Nurse Bleecker was able to glue the cut shut and covered the cut with a Band-aid. (*Id.*) She noted that the cut was not to Harris's artery. (*Id.*, ¶ 83.) She also documented that Harris only had one cut on his arm. (*Id.*, ¶ 84.)

Harris states that Nurse Bleecker only treated one of his cuts—the most serious one—and did not treat the others. (ECF No. 35, ¶ 84; ECF No. 36, ¶ 14.) Harris's vitals were all normal and he didn't have any other issues. (*Id.*, ¶ 85.) Nevertheless, Harris asserts that he "believe[s] he would've died without medical attention." (ECF No. 34 at 9). He also states that he suffered emotional distress. (*Id.*) However, Harris does not provide any evidence supporting his assertion that he was in danger of dying or any evidence that he suffered from emotional anguish or distress.

Harris was then transferred to the observation unit. (ECF No. 35, ¶ 87.) While in the observation unit, the defendants assert that Harris explained he was never suicidal and that he acted out because his food had been confiscated. (*Id.*, ¶¶ 88-90.) Harris denies that he stated he was never suicidal. (*Id.*)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See*

*Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Harris claims the defendants' violated his Eighth Amendment rights when they were deliberately indifferent to his suicide attempt. The Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain.'" *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "A § 1983 claim based upon a violation of the Eighth Amendment has both an objective and subjective element: (1) the harm that befell the

prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). In instances of suicide, a plaintiff must "allege plausibly that prison staff (1) knew of a significant likelihood that he would imminently attempt suicide and (2) failed to take reasonable steps to prevent his attempt." *Davis-Clair v. Turck*, 714 Fed App'x 605, 606 (7th Cir. 2018).

A question of fact exists as to whether the defendants were deliberately indifferent to Harris's threat to harm himself. Nonetheless, Harris has failed to demonstrate that he suffered a serious and recoverable injury because of any alleged indifference. In this district, courts have taken different approaches when analyzing the significance of a plaintiff not proving that he suffered a serious injury. Some courts have found that, where a person threatens suicide but does not cause himself serious harm, he has not established that he faced an objectively serious risk. *See Phillips v. Deidrick*, No. 18-C-56, 2019 WL 318403 at *3 (E.D. Wis. Jan. 24, 2019) (plaintiff did not face an objectively serious risk where he used a small razor to make superficial cuts on his arm). Other courts, pursuant to *Lord v. Beahm*, 952 F.3d 902, (7th Cir. 2020), have found that, where a plaintiff has made an insincere threat of suicide and suffers only superficial or minor injuries, he has failed to demonstrate that he suffered a recoverable injury. *See Braithwaite v. Bille*, Case No. 17-cv-706-pp, 2022 WL 1241185 at *3 (E.D. Wis. April 27, 2022).

7

Case 2:23-cv-01188-WED    Filed 02/12/25    Page 7 of 10    Document 43

In *Lord*, the plaintiff, upset that the defendant officer would not return to his cell, began screaming that he had a razor blade and would cut himself, taking his life. *Id.* at 904-05. The plaintiff then inflicted only minor scratches on himself. *Id.* at 905. The court noted that the plaintiff, in supporting his claim, "did not focus his § 1983 claim on these scratches, or for that matter, on any other physical injury. To the contrary, he focused exclusively on the *risk*—the danger he presented to himself by having a razor blade and the officers then ignoring his unmistakable plea he intended to kill himself." *Id.* (emphasis in original). As such, the plaintiff failed to develop "evidence of a recoverable injury." *Id.*

It is undisputed that the harm Harris suffered was superficial. While Harris states that he believed he was in mortal danger, he offers no evidence that he was in mortal danger. Bald assertions that are not bolstered by more specific evidence are insufficient to create a genuine issue of material fact. *Drake v. Minn Mining & Mfg Co.*, 134 F.3d 878, 887 (7th Cir. 1998). And Harris admits that the 2.5 cm cut was "the most serious" of the cuts he sustained. (ECF No. 35, ¶ 85.) The lack of any real harm demonstrates that Harris's threat was insincere.

While Harris argues that he suffered psychological harm, he provides no evidence of such (such as medical records of treatment for psychological harm). It is on the plaintiff to establish that a constitutional violation "*caused* the plaintiff injury or damages." *Lord*, 952 F.3d at 905. (emphasis in original). Harris's argument, like the plaintiff's argument in *Lord*, focused on the fact that the defendants knew he had a razor and did not take action—*i.e.,* he focused on the risk and not the injuries.

8

Considering all these factors together, Harris, like the plaintiff in *Lord*, has failed to establish that he suffered a recoverable injury. Therefore, summary judgment is granted in the defendants' favor.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. The defendants also argued that they were entitled to qualified immunity but, because the court found in their favor on the merits, it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 20) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment

under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 12th day of February, 2025.

BY THE COURT

_WILLIAM E. DUFFIN_
WILLIAM E. DUFFIN
United States Magistrate Judge